UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

_____
                                )
DAVID NÚÑEZ PÉREZ,              )
                                )
                Petitioner,     )
                                )
        v.                      )          CIVIL ACTION NO.
                                )          3:19-cv-01555-WGY
ERIK ROLON SUAREZ,             )
HECTOR HERNANDEZ-MORALES, and   )
COMMONWEALTH OF PUERTO RICO,    )
                                )
                Respondents.    )
_____)


YOUNG, D.J.[1]                              August 1, 2022

### MEMORANDUM AND ORDER

I.    INTRODUCTION

    "The Constitution's Double Jeopardy Clause[2] is an

analytically gnarly beast.  What seems like a fairly

_____
    [1]  Of the District of Massachusetts, sitting by designation.
    [2]  The Fifth Amendment to the United States Constitution
provides:

        No person shall be held to answer for a capital, or
        otherwise infamous crime, unless on a presentment or
        indictment of a Grand Jury, except in cases arising in the
        land or naval forces, or in the Militia, when in actual
        service in time of War or public danger; **nor shall any
        person be subject for the same offence to be twice put in
        jeopardy of life or limb**; nor shall be compelled in any
        criminal case to be a witness against himself, nor be
        deprived of life, liberty, or property, without due process

straightforward prohibition on multiple prosecutions for the same crime turns out to be a bramble bush of doctrinal twists and snarls.  At the center is the so-called dual sovereignty doctrine."  Anthony J. Colangelo, Gamble, Dual Sovereignty, and Due Process, 2019 Cato Sup. Ct. Rev. 189, 189.  Under our system of government, the federal government and the States are separate sovereigns and as such can charge, convict, and sentence the same individual for the same crime.  What about the Commonwealth of Puerto Rico?  Somewhat late in the game, "[t]he Supreme Court has only once directly addressed whether Puerto Rico is a separate sovereign from the federal government, in a criminal case."  Centro de Periodismo Investigativo, Inc. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico, 35 F.4th 1, 14 (1st Cir. 2022).  In 2016, the Supreme Court held in Puerto Rico v. Sánchez Valle that the United States of America and the Commonwealth of Puerto Rico are not -- and never have been -- separate sovereigns for purpose of the Double Jeopardy Clause.

---

of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V (emphasis added).  "The Double Jeopardy Clause [(emphasized above)] 'protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.'"  United States v. Almonte-Núñez, 963 F.3d 58, 68 (1st Cir. 2020) (quoting Brown v. Ohio, 432 U.S. 161, 165 (1977)), cert. denied, 141 S. Ct. 1245 (2021).

579 U.S. 59, 78 (2016).  The Supreme Court reasoned that, "while each State is a separate sovereign from the federal government for purposes of the Fifth Amendment's Double Jeopardy Clause, Puerto Rico is not because the historical source of Puerto Rico's prosecutorial power was derived from the federal government."  Centro de Periodismo Investigativo, Inc., 35 F.4th at 14 (citing Sánchez Valle, 579 U.S. at 68-69, 75).

The case before the Court illustrates the profound difference this distinction makes.  Petitioner David Núñez Pérez ("Núñez Pérez") claims that he has suffered Double Jeopardy, having been convicted and sentenced by the United States for the same crime for which he was later convicted and sentenced by the Commonwealth of Puerto Rico.  See Pet. 6, ECF No. 3; Pet., Ex. 1, Pet. Pursuant 28 U.S.C. § 2254 ("Section 2254 Petition") 5, ECF No. 3-1.  In fact, the parties agree that if these criminal actions were prosecuted **today**, at least the Puerto Rico convictions and sentences for carjacking and manslaughter -- totaling forty-six years and six months' additional prison time -- constitutionally would be barred by the Double Jeopardy Clause.  See Joint Mot. Compl. Court Order ("Joint Mot.") 4, 10, ECF No. 49.[3]

---

[3] The Commonwealth indicates forty-seven years and six months' is at issue, see Joint Mot. 10, but this appears to be a typographical error.

The Respondents, Erik Rolon Suarez, Hector Hernandez-Morales, and the Commonwealth of Puerto Rico (collectively "the Commonwealth") argue, however, that Núñez Pérez's petition is time-barred under the statute of limitations set by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") pursuant to 28 U.S.C. 2244(d)(1)(C). See Mot. Dismiss Habeas Corpus Pet. ("Mot. Dismiss") 3-5, ECF No. 17. The Petitioner and Respondents disagree about the retroactivity of Sánchez Valle, but agree that even if, arguendo, the Supreme Court's decision in Sánchez Valle (1) established a "right" that was "newly recognized by the Supreme Court" and (2) "made retroactively applicable to cases on collateral review," the petition is untimely by eleven days and must be dismissed without reaching the merits **unless** equitable tolling applies.

For the reasons stated below, the Commonwealth's motion to dismiss the petition for a writ of habeas corpus under 28 U.S.C. § 2254, ECF No. 17, is hereby **DENIED**. Sánchez Valle is retroactive, and equity demands that the eleven-day defalcation on the AEDPA's statute of limitations be excused. Furthermore, because the parties do not dispute that the federal charge and certain later Puerto Rico charges are identical, the Commonwealth of Puerto Rico's prosecution, conviction, and sentencing of Núñez Pérez violates the Double Jeopardy Clause with respect to the charge, conviction, and resultant sentence

[4]

for carjacking and manslaughter, with the effect of reducing Núñez Pérez's sixty-nine-year sentence by forty-six years and six months.[4]

## II.  BACKGROUND

### A.  Facts Concerning Underlying Federal And Puerto Rico Convictions

#### 1. Núñez Pérez Convicted in Federal Court for Carjacking with Resultant Death and Sentenced to Ten Years' Custody.

The facts of the crime are as senseless as they are heartbreaking.  On June 26, 2001, Núñez Pérez with two others participated in a carjacking of a customer at a fast-food restaurant, netting $90.00.  See Third Mot. Submitting Certified Trans., Ex. C, Offic. Trans. J. P.R. Cir., Puerto Rico v. Núñez Pérez, KLAN0400170 ("P.R. Cir. J.") 2, ECF No. 47-3.  Núñez Pérez was a passenger in that stolen car.  Id. 2-3.  After being pursued by police, the driver struck and killed Puerto Rico Police Officer William Camacho who was on foot and attempting to protect the public by stopping or diverting traffic.[5]  Id. 3.

_____

[4] Even with the reduction of sentence here, Núñez Pérez still has substantial time to serve on other weapons convictions relating to the same incident.  See infra at II.A.2.

[5]  The First Circuit, in the context of affirming the conviction against the driver of the vehicle, Carlos Martinez–Bermudez ("Martinez"), recounts Officer Camacho-Rivera's tragic death as he was fulfilling his duty as a police officer:

Officer Camacho-Rivera exited the patrol car and began to stop oncoming traffic.  Martinez drove the stolen

On July 24, 2001, Núñez Pérez was indicted, with two others, on three counts in the United States District Court for the District of Puerto Rico (the "Federal Criminal Action") for:

Count One -- Violation of 18 USC § 2119(3) and §2: taking a motor vehicle by force or violence, with the intent to cause death or serious bodily harm and resulting in death ("Federal Carjacking Count")

Count Two -- Violation of 18 USC § 924(c)(1)(A)(ii): possessing, brandishing or carrying firearms in relation or furtherance of a carjacking.

Count Three -- Violations of 18 USC § 922(g)(1) and 18 USC § 924 (a)(2): possessing a firearm having been convicted in court of a crime being punishable by imprisonment of a term exceeding one year.

---

vehicle approximately sixty miles per hour down the wrong side of Comercio Street -- that is, against the flow of traffic -- and toward Officer Camacho-Rivera. Although Martinez had sufficient time to stop or change the direction of his vehicle, he did not do so. Instead, he struck and killed Officer Camacho-Rivera, then lost control of the car and struck two civilian vehicles before the stolen car finally came to a stop.

United States v. Martinez-Bermudez, 387 F.3d 98, 99 (1st Cir. 2004). As to his federal prosecution, Martinez was sentenced to life in federal prison after pleading guilty to carjacking resulting in death pursuant to 18 U.S.C. § 2119(3). See id. With respect to his Puerto Rico prosecution, Martinez apparently pleaded guilty. See P.R. Cir. J. 4. There is a discrepancy between the official translation in the Puerto Rico Appeals Court case and the First Circuit's recitation as to who was the driver as between Martinez and another individual. Compare Martinez-Bermudez, 387 F.3d at 99 ("Martinez drove the stolen vehicle . . . .") with P.R. Cir. J. 3 ("Rivera Heredia maneuvered the Elantra . . . ."). This discrepancy is immaterial because it is undisputed that the driver was **not** Núñez Pérez.

Judgment, United States v. Núñez-Pérez et al., Criminal No. 01-0519 (D.P.R. Sept. 18, 2002), ECF No. 71.  On May 2, 2002, Núñez Pérez pled guilty to aiding and abetting the Federal Carjacking Count, and was later sentenced to 120 months' -- ten years -- incarceration for his participation in the carjacking.  See id. The remaining two firearms charges were dismissed.  Id.

### 2. Núñez Pérez Subsequently Convicted in Puerto Rico Court on Charges Relating to Same Incident and Sentenced to Sixty-Nine Years to Run Consecutively to Federal Sentence.

In February 2002, while the Federal Criminal Action was pending, Núñez Pérez was indicted by the Commonwealth of Puerto Rico in the Mayagüez Superior Court (the "Puerto Rico Criminal Action") for Carjacking (Case IDP2002G0408), First Degree Murder (IVI2002G0029) (collectively "the Puerto Rico Carjacking and Manslaughter[6] Counts"), and two other weapons' possession charges relating to the same incident (collectively "the Puerto Rico Weapons' Possession Charges").  See Third Mot. Submitting Certified Trans., Ex. B, Offic. Trans. J. P.R. Ct. First Instance, Puerto Rico v. Núñez Pérez, Criminal No. PD2002G0320 3-10, ECF No. 47-2.  Núñez Pérez was found guilty by a jury on all of the charges, except the murder charge for which he was found guilty of manslaughter.  See id.

---

[6] Núñez Pérez was convicted of the lesser included offense of manslaughter.

Núñez Pérez received a sixty-nine-year Puerto Rico prison sentence to run **consecutively** to his ten-year federal sentence as follows: forty-five years' custody for carjacking, one year and six months' custody for manslaughter, and twenty-two years and six months' custody on the weapons' possession charges.  See id. 3-10.

The Respondents stipulate that the Federal Carjacking Count on the one hand, and the Puerto Rico Carjacking and Manslaughter Counts on the other, are identical crimes for purposes of Double Jeopardy analysis.  See Joint Mot. 10.

### B.   Post-Conviction Procedural History In Puerto Rico Courts

#### 1. Núñez Pérez's Conviction Affirmed and Double Jeopardy Claim Rejected on Direct Appeal.

Núñez Pérez appealed his Puerto Rico convictions arguing among other things that Double Jeopardy applied.  On August 31, 2006, the Puerto Rico Court of Appeals rejected that argument, and the convictions were affirmed.  P.R. Cir. J. 24-25.  That court held that "[t]he doctrine of dual sovereignty applies to the Commonwealth of Puerto Rico.  Therefore, conduct that constitutes a crime in both jurisdictions may be punished independently by both entities, without violating the constitutional clause against double jeopardy or constituting multiple punishments for the same conduct."  Id. (citation omitted).  Núñez Pérez's request for certiorari to the Supreme

Court of Puerto Rico was denied on February 2, 2007, for lack of jurisdiction.  First Mot. Submitting Certified Trans., Ex. 1, Certified Trans. Res. Denying Cert. P.R. Supreme Ct., <u>Puerto Rico</u> v. <u>Núñez Pérez</u>, CC-2006-1062 1, ECF No. 39-1.

### 2. Núñez Pérez's Rule 192.1 Motion based upon Supreme Court Decision <u>Sánchez Valle</u> was Denied.

On **June 9, 2016** -- ten years after Núñez Pérez's conviction became final -- the Supreme Court issued its decision in <u>Puerto Rico</u> v. <u>Sánchez Valle</u>.

On **June 20, 2017** -- one year and eleven days after that decision -- Núñez Pérez, with the assistance of the Legal Aid Society, filed a motion pursuant to Rule 192.1 of the Puerto Rico Rules of Criminal Procedure, arguing that Double Jeopardy applied to his Puerto Rico convictions under <u>Sánchez Valle</u>.  <u>See</u> Fourth Mot. Submitting Certified Trans., Ex. 1, Offic. Trans. Res. Denying Req. Release P.R. Ct. First Instance, Civ. No. IPD2002GO4O8, IVI2002GOO29 ("P.R. Ct. First Instance Res.") 1, ECF No. 50-1.  The Rule 192.1 motion was denied on September 12, 2018.  <u>Id.</u> 5.

Núñez Pérez applied for certiorari to the Puerto Rico Court of Appeals, which denied the writ on December 18, 2018.  <u>See</u> Third Mot. Submitting Certified Trans., Ex. 4, Offic. Trans. Res. Denying Writ Cert. P.R. Cir. Ct., KLCE201801466 ("P.R. Cir. Ct. Res.") 1, 7, ECF No. 47-4.  In denying the writ of

certiorari, the Court of Appeals rejected the retroactive
application of Sánchez Valle to Núñez Pérez's case because his
conviction was final before Sánchez Valle was decided:

> [A]s to the retroactive application of the rule
> announced in Pueblo v. Sánchez Valle, we find that the
> legal controversy was duly settled in Pueblo v. Torres
> Irizarry. In the latter case, the Puerto Rico Supreme
> Court set forth a precedent that the lower courts must
> observe and apply. The Supreme Court held that Pueblo
> v. Sánchez Valle established a constitutional defense
> in favor of the accused and that the caselaw rule
> applies retroactively, provided the judgment in that
> case is not yet final. Pueblo v. Torres Irizarry, 199
> DPR, at 30 [99 PR Offic. Trans. 3, at 13]. In so
> ruling, the Puerto Rico Supreme Court examined the
> controversy based on its pronouncements in Pueblo v.
> González Cardona, 153 DPR 765, 774 [53 PR Offic.
> Trans. 51, 7] (2001), which, in turn, considered the
> rule set forth in Teague v. Lane, 489 US 288 (1989),
> the case cited by petitioner. See: Pueblo v. Torres
> Irizarry, 199 DPR, at 27 [99 PR Offic. Trans. 3, at
> 12]; Pueblo y. González Cardona, 153 DPR, at 772 [53
> PR Offic. Trans. 51, at 6] n. 2].
>
> Seeing that there is no controversy as to the
> fact that a final and unappealable judgment has been
> entered against Núñez Pérez when Pueblo v. Sánchez
> Valle was decided, we find no compelling reason to
> disturb the appealed Resolution. In addition, we find
> no indication of passion, prejudice, bias, or manifest
> error in the decision rendered by the [Court of First
> Instance].
>
> For the foregoing reasons, we deny the writ of
> certiorari in accordance with the criteria provided
> under Court of Appeals Rule 40.

Id. 7. Núñez Pérez applied for certiorari to the Supreme Court
of Puerto Rico, which was denied on February 15, 2019, along

with two motions for reconsideration which were denied not later than May 17, 2019.  See Answer ¶ 12, ECF No. 36.[7]

**C.  Habeas Corpus Procedural History In Federal Court**

This petition was initially filed pro se by Núñez Pérez, mailed May 21, 2019, and docketed on June 7, 2019.  See Pet., Ex. 2, Envelope, ECF No. 3-2; Pet.  Counsel appeared on behalf of Núñez Pérez a year later on June 9, 2020.  See Notice of Appearance, ECF No. 13.  A supplemental motion in support of the petition was filed on October 23, 2020.  See Mem. Supp. Habeas Corpus Pet., ECF No. 14.  On March 29, 2021, the Commonwealth filed a motion to dismiss the petition.  Mot. Dismiss Habeas Corpus Pet., ECF no. 17.  On June 3, 2021, the Court ordered supplemental briefing.  Order, ECF No. 18.  On June 23, 2021, Núñez Pérez filed a supplemental memorandum.  See Mot. Compliance Order ("Pet.'s Suppl. Mem."), ECF No. 21.  On July 2, 2021, the Commonwealth filed its supplemental memorandum.  See Reply Pet.'s Mem. & Compliance Court's Order ("Resp'ts' Suppl. Mem."), ECF No. 22.

---

[7]  Other than the representation in the Answer, the Court is without any record of the dates surrounding the applications and denials of certiorari and the motions for reconsideration with the Supreme Court of Puerto Rico.  The Court has requested a complete record as to the decisions of the Puerto Rico Courts. To the extent the Commonwealth has failed to provide more complete information, the issue is waived.

On November 4, 2021, the Court held a hearing on the motion to dismiss.  See Minute Order, ECF No. 29.

On November 18, 2021, the Court ordered the Respondents to answer the petition and that the motion to dismiss was held in abeyance.  Order 1, ECF No. 30.  On February 4, 2022, the Respondents filed an answer to the Petition.  See Answer.

On March 31, 2022, the Court ordered supplemental briefing with respect to the parties' positions on the statute of limitations, whether the Respondents would waive the statute of limitations for purposes of this action, and determining which charges, convictions, and corresponding prison time would be barred by the Double Jeopardy Clause.  See Order, ECF No. 45. On May 9, 2022 the parties filed a joint memorandum in response to the Court's Order.  See Joint Mot.  The Commonwealth submitted official translations of pertinent documents.  See First Mot. Submitting Certified Trans., ECF No. 39; Second Mot. Submitting Certified Trans., ECF No. 41; Third Mot. Submitting Certified Trans., ECF No. 47; Fourth Mot. Submitting Certified Trans., ECF No. 50.[8]

The Court has reviewed the submissions of the parties, and determines that neither further development of the record, nor

---

[8]  The Court expresses its gratitude to the Bureau of Translations of the Supreme Court of Puerto Rico for its expeditious provision of official translations of pertinent Puerto Rico decisions and record in the underlying action.

an evidentiary hearing is necessary pursuant to Rules 7 and 8 of the Rules Governing section 2254 Cases in the United States District Courts.  The matter is ripe for decision.

### III. ANALYSIS

#### A. The Petition is Timely

Pursuant to section 2244, "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 26 U.S.C. § 2244(d)(1).  This limitations period runs "from the latest of . . . the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  Id.

Here, Sánchez Valle was decided **June 9, 2016.**  Núñez Pérez filed a Rule 192.1 Motion under Puerto Rico Rules of Criminal Procedure on **June 20, 2017** -- eleven days past the one-year anniversary.[9]  Thus, presuming Sánchez Valle sets the date at

---

[9] Had Núñez Pérez filed the Rule 192.1 motion within one year, the petition would have been timely because the statute of limitations would have been tolled.  "[M]otions under Rule 192.1 are a form of collateral attack. . . .  As such, pursuant to [28 U.S.C.] § 2244(d)(2), the time in which this [type of] motion is pending 'shall not be counted toward any period of limitation under this subsection.'"  Pérez-Pagán v. Mercado-Quiñones, 179 F. Supp. 3d 174, 177 (D.P.R. 2016) (Domínguez, J.) (quoting 28 U.S.C. § 2244(d)(2)).  "The First Circuit Court of Appeals has held that 'Section 2244(d)(2) does not reset the clock on the limitations period.'  Trapp v. Spencer, 479 F. 3d 53, 58 (1st Cir. 2007).  [A federal habeas petitioner] cannot extend the

which the statute of limitations begins to run, the petition is untimely absent equitable reasons to excuse untimely filing.

Núñez Pérez admits that absent equitable tolling, the petition is time-barred.  See Joint Mot. 3 ("[T]he Petitioner (for sake of professional honesty) must concede that the petition was untimely.").  He "requests for the application of equitable tolling, and for the dismissal of the affirmative defense of the one-year statute of limitation under the 28 U.S.C [§] 2244(d)(1)(C)" or in "the alternative, . . . for this Court to schedule an argumentative hearing to further discuss this matter."  Id. 4.

"[E]quitable tolling is strong medicine, not profligately to be dispensed."  Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001).  Typically, "[t]o establish a basis for equitable tolling, a habeas petitioner must demonstrate that he or she has diligently pursued her rights, but some extraordinary circumstance, or obstacle, prevented timely filing."  Blue v. Medeiros, 913 F.3d 1, 8 (1st Cir. 2019) (citing Holland v. Florida, 560 U.S. 631, 649 (2010)).  Under this approach, "[t]he diligence prong covers those affairs within the petitioner's control, while the extraordinary-circumstances prong covers

AEDPA statute of limitations by filing a Rule 192.1 motion."
Diaz-Castro v. Matta 568 F. Supp. 3d 144, 150 (D.P.R. 2021)
(Besosa, J.).  Since the parties did not argue a different
period, the eleven days' defalcation controls here.

matters outside his control." <u>Id.</u>  The burden is on "the
petitioner to establish 'a causal relationship between the
extraordinary circumstances on which the claim for equitable
tolling rests and the lateness of his filing.'" <u>Id.</u>  To be
sure, the First Circuit admonishes that the "AEDPA's statute of
limitations will not be equitably tolled merely because the
underlying grounds for habeas relief are extraordinary; rather,
the 'extraordinary circumstance' must be one that actually
**caused** the untimely filing." <u>Holmes</u> v. <u>Spencer</u>, 685 F.3d 51, 62
(1st Cir. 2012) (citing <u>Holland</u>, 560 U.S. at 648).

Even so, the First Circuit, in the context of this test,
teaches that the Court must always "apply equitable tolling on a
case-by-case basis, avoiding mechanical rules and favoring
flexibility." <u>Holmes</u>, 685 F.3d at 62 (quotations omitted).
Indeed, the Supreme Court in <u>Holland</u> recognized that equity is
not a one-size-fits-all proposition even in the context of the
two-prong test:

> We have said that courts of equity "must be
> governed by rules and precedents no less than the
> courts of law." <u>Lonchar</u> v. <u>Thomas</u>, 517 U.S. 314, 323,
> 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996) (internal
> quotation marks omitted).  But we have also made clear
> that often the "exercise of a court's equity powers
> ... must be made on a case-by-case basis." <u>Baggett</u> v.
> <u>Bullitt</u>, 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d
> 377 (1964).  In emphasizing the need for
> "flexibility," for avoiding "mechanical rules,"
> <u>Holmberg</u> v. <u>Armbrecht</u>, 327 U.S. 392, 396, 66 S.Ct.
> 582, 90 L.Ed. 743 (1946), we have followed a tradition
> in which courts of equity have sought to "relieve

> hardships which, from time to time, arise from a hard
> and fast adherence" to more absolute legal rules,
> which, if strictly applied, threaten the "evils of
> archaic rigidity," Hazel-Atlas Glass Co. v. Hartford-
> Empire Co., 322 U.S. 238, 248, 64 S.Ct. 997, 88 L.Ed.
> 1250 (1944).  The "flexibility" inherent in "equitable
> procedure" enables courts "to meet new situations
> [that] demand equitable intervention, and to accord
> all the relief necessary to correct ... particular
> injustices."  Ibid.  (permitting postdeadline filing
> of bill of review).  **Taken together, these cases
> recognize that courts of equity can and do draw upon
> decisions made in other similar cases for guidance.
> Such courts exercise judgment in light of prior
> precedent, but with awareness of the fact that
> specific circumstances, often hard to predict in
> advance, could warrant special treatment in an
> appropriate case.**

Holland, 560 U.S. at 649-650 (emphasis added).  Applying Holland

here, the Court determines that equity demands the tolling of

the statute of limitations.

Núñez Pérez asserts in his petition under the pains and

penalties of perjury that "when [he] found out about the . . .

Sánchez Valle case [he] filed a motion under Rule 192.1."  Pet.

12.  According to the record, Núñez Pérez was represented by the

Legal Aid Society when he filed his Rule 192.1 Petition eleven

days after the federal deadline expired.  On this evidence and

the procedural history, Núñez Pérez has satisfied the diligence

prong.

The second prong, extraordinary circumstances, is also

satisfied -- albeit barely -- by the unique circumstances in

this case that warrants flexibility.  While counsel's garden

variety errors are not extraordinary circumstances by themselves, see Trapp v. Spencer, 479 F.3d 53, 60 (1st Cir. 2007) ("This circuit, along with many others, has held that 'mistake by counsel in reading [AEDPA] or computing the time limit is, at most, a routine error' and does not constitute extraordinary circumstances warranting equitable tolling." (quotations omitted)), counsel's oversight here was more significant than a routine error and appears to be the result of a complex set of legal and factual circumstances.

As an initial matter, it is apparent that Núñez Pérez's counsel may have been entirely unaware of the AEDPA deadline running while preparing a Puerto Rico Court Rule 192.1 motion that had no deadline at all. See P.R. Laws tit. 34A, § II, R. 192.1 ("The motion . . . may be filed at any time.")  To be sure, this element is not sufficient by itself.  Additionally, though, the relevant issue in this case -- retroactivity of a unique Double Jeopardy argument -- is extraordinarily complex, and in the context of the interplay between AEDPA's non-jurisdictional statute of limitations and a prisoner's exhaustion of state remedies, is rendered more difficult to understand, even for skilled practitioners.

In the absence of a more detailed record, this is an "appropriate case" presenting "specific circumstances, often hard to predict in advance, . . . warrant[ing] special

[17]

treatment," <u>Holland</u>, 560 U.S. at 650: the rigid application of AEDPA's statute of limitations here would be inequitable. Indeed, if equitable tolling is to have any meaning at all, it must be applied in this case.  Here, a prisoner through counsel filed a timely post-conviction motion under Puerto Rico law to the appropriate Puerto Rico court that was a mere eleven days late under the AEDPA.  Under ordinary circumstances, the petition was dead on arrival when Núñez Pérez, after the end of that process, and at that point <u>pro se</u>, swiftly filed his habeas petition in this Court.  Taking a "case-by-case" approach, equity in this case is a concept of the sum being more than its parts.  Viewing the case as a whole, rather than individual elements myopically, the procedural posture combined with novel issues of law were obstacles to filing that, in light of the stakes at issue here -- an additional forty-six years and six months imprisonment, in practical terms a life sentence -- is so disproportionate that equity would seem to mandate tolling -- that's the way it looks to me.  See <u>Cruz-Berrios</u> v. <u>Borrero</u>, CV 14-1232 (ADC), 2020 WL 5820955, at *6 (D.P.R. Sept. 30, 2020) (Delgado-Colón, J.) (denying Fed. R. Civ. P. 60(b) relief on successful section 2254 habeas action, describing procedural confusion as an extraordinary circumstance of petition filed purportedly 1,113 days late, and stating: "In this Court's view, 1,113 days are nothing compared to the long years of

imprisonment served by the now-64 years old petitioner under a
[life] sentence successfully challenged under 2254.  Moreover,
without a doubt there are extraordinary circumstances that stood
in the way of a timely habeas petition.").

**B. The Supreme Court's Decision in <u>Sánchez Valle</u> that the
United States and Puerto Rico are a Single Sovereign for
Purposes of Double Jeopardy is a New Substantive Rule
that Applies Retroactively.**

### 1. The Habeas Corpus Standard

Federal habeas corpus relief with respect to a Puerto Rico
judgment is exceptional.  "Under the 'peculiarly deferential
standards' of the [AEDPA], error by a [Puerto Rico] court,
without more, is not enough to warrant federal habeas relief.'"
<u>Gomes</u> v. <u>Silva</u>, 958 F.3d 12, 19 (1st Cir. 2020) (quoting <u>Bebo</u> v.
<u>Medeiros</u>, 906 F.3d 129, 134 (1st Cir. 2018).  "As relevant here,
a [Puerto Rico] court decision may only be overturned on habeas
review if it is 'contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined
by the Supreme Court of the United States.'"  <u>Bebo</u>, 906 F.3d at
134 (quoting 28 U.S.C. § 2254(d)(1)).

The First Circuit describes what is required to meet this
rigorous standard as follows:

> It is well established that "[a] state court decision
> is 'contrary to' clearly established federal law 'if
> the state court applies a rule that contradicts the
> governing law set forth by the Supreme Court or
> confronts a set of facts that are materially

[19]

> indistinguishable from a decision of [the Supreme
> Court] and nevertheless arrives at a result different
> from [its] precedent.'"  Linton v. Saba, 812 F.3d 112,
> 122 (1st Cir. 2016) (quoting Hensley v. Roden, 755
> F.3d 724, 731 (1st Cir. 2014)).  On the other hand, "a
> state court adjudication constitutes an unreasonable
> application [of clearly established federal law] if
> the state court identifies the correct governing legal
> principle from the Supreme Court's then-current
> decisions but unreasonably applies that principle to
> the facts of the . . . case."  Id. (quoting Hensley,
> 755 F.3d at 731).

Hollis v. Magnusson, 32 F.4th 1, 7–8 (1st Cir. 2022).  Here, the

petition seeks relief under contrary-to and unreasonableness

provisions.

### 2. The United States and Puerto Rico are a Single Sovereign for Purposes of Double Jeopardy

One of the most familiar precepts of Constitutional law is

the Double Jeopardy Clause of the Fifth Amendment to the

Constitution which, among other things, "prohibits more than one

prosecution for the 'same offence'" by the same sovereign.

Sánchez Valle, 579 U.S. at 62; see Abney v. United States, 431

U.S. 651, 660–61 (1977).  Justice Gorsuch recently described the

deep-seated roots of this principle enshrined in our

Constitution:

> Fear and abhorrence of governmental power to try
> people twice for the same conduct is one of the oldest
> ideas found in western civilization.  Throughout
> history, people have worried about the vast disparity
> of power between governments and individuals, the
> capacity of the state to bring charges repeatedly
> until it wins the result it wants, and what little
> would be left of human liberty if that power remained
> unchecked.  To address the problem, the law in ancient

[20]

> Athens held that a man could not be tried twice for
> the same offense.  The Roman Republic and Empire
> incorporated a form of double jeopardy protection in
> their laws.  The Old Testament and later church
> teachings endorsed the bar against double jeopardy
> too.  And from the earliest days of the common law,
> courts recognized that to punish a man twice over for
> one offence would be deeply unjust.

Gamble v. United States, 139 S. Ct. 1960, 1996 (2019) (Gorsuch,

J., dissenting) (citations and quotations omitted).

As between the United States and the States of the Union,

there is an exception to the protection of the Double Jeopardy

Clause permitting both the federal government and the States to

prosecute a person separately for the same offense: the dual

sovereignty doctrine.  Under the dual sovereignty doctrine, "a

single act gives rise to distinct offenses -- and thus may

subject a person to successive prosecutions -- if it violates

the laws of separate sovereigns."  Sánchez Valle, 579 U.S. at

62.  The dual sovereignty doctrine between the federal

government and the States, criticized in Gamble by the late-

Justice Ginsburg as a "metaphysical subtlety" and Justice

Gorsuch as a "colossal exception to this ancient rule against

double jeopardy,"[10] is at least for now settled law, permitting

---

[10] See Gamble, 139 S. Ct. at 1989 (Ginsberg, J., dissenting)
("I dissent from the Court's adherence to that misguided
doctrine.  Instead of frittering away Gamble's liberty upon a
metaphysical subtlety, two sovereignties, I would hold that the
Double Jeopardy Clause bars successive prosecutions for the same
offense by parts of the whole USA.") (citations and quotations
omitted) (citing Sánchez Valle, 136 S. Ct. at 1877; Grant, The

[21]

prosecutions for identical offenses under both federal and State
law because they are separate sovereigns.  See Gamble, 139 S.
Ct. at 1964 ("Under this "dual-sovereignty" doctrine, a State
may prosecute a defendant under state law even if the Federal
Government has prosecuted him for the same conduct under a
federal statute.").  Said another way, "two prosecutions . . .
are not for the same offense if brought by different sovereigns
-- even when those actions target the identical criminal conduct
through equivalent criminal laws."  Sánchez Valle, 579 U.S. at
66-67.

     While Puerto Rico shares many similarities with the States
of the Union, it maintains "a distinctive, indeed exceptional,
status as a self-governing Commonwealth," id. at 73, and "boasts
a relationship to the United States that has no parallel in our

_____

Lanza Rule of Successive Prosecutions, 32 Colum. L. Rev. 1309,
1331 (1932)); id. at 1996 (Gorsuch, J., dissenting) ("A free
society does not allow its government to try the same individual
for the same crime until it's happy with the result.
Unfortunately, the Court today endorses a colossal exception to
this ancient rule against double jeopardy.  My colleagues say
that the federal government and each State are "separate
sovereigns" entitled to try the same person for the same crime.
So if all the might of one 'sovereign' cannot succeed against
the presumptively free individual, another may insist on the
chance to try again.  And if both manage to succeed, so much the
better; they can add one punishment on top of the other.  But
this 'separate sovereigns exception' to the bar against double
jeopardy finds no meaningful support in the text of the
Constitution, its original public meaning, structure, or
history.  Instead, the Constitution promises all Americans that
they will never suffer double jeopardy.  I would enforce that
guarantee.").

history," id. at 77 (quotations omitted).  Prior to the Supreme
Court's 2016 decision in Sánchez Valle, "it was established in
this circuit that the United States and the Commonwealth of
Puerto Rico were separate sovereigns."  United States v.
Almonte-Nunez, 963 F.3d 58, 69 (2020) (citing United States v.
López Andino, 831 F.2d 1164, 1168 (1st Cir. 1987)).[11]  Since
Sánchez Valle, however, "the Supreme Court has now held that
'for purposes of the Double Jeopardy Clause, . . . the
Commonwealth and the United States are not separate
sovereigns.'"  Almonte-Nunez, 963 F.3d at 68 (quoting Sánchez
Valle, 579 U.S. at 78).  The holding goes straight to the heart
of the derivative nature of Puerto Rico's prosecutorial power:

> Because the ultimate source of Puerto Rico's
> prosecutorial power is the Federal Government --
> because when we trace that authority all the way back,
> we arrive at the doorstep of the U.S. Capitol -- the
> Commonwealth and the United States are not separate
> sovereigns.  That means the two governments cannot
> "twice put" respondents Sánchez Valle and Gómez
> Vázquez "in jeopardy" for the "same offence." U.S.
> Const., Amdt. 5.

---

[11] The Eleventh Circuit in 1993 disagreed with the First
Circuit's belief that Puerto Rico is a separate sovereign.  See
United States v. Sanchez, 992 F.2d 1143, 1151-52 (11th Cir.
1993) ("As a territory, Puerto Rico remains outside an exception
to the Double Jeopardy Clause which is based upon dual
sovereignty.").  In Sanchez, the Eleventh Circuit reversed a
murder for hire conviction in federal court because it was
duplicative of an attempted murder charge under Puerto Rico law.
Id. at 1159.

Sánchez Valle, 579 U.S. at 78.  As the First Circuit recently observed in the context of law-of-the-case doctrine, "Sánchez Valle represents a dramatic intervening change in controlling legal authority."[12]  Almonte-Nunez, 963 F.3d at 69 (quotations omitted).

### 3. The Supreme Court's Decision in Sánchez Valle is a New Rule.

Did the Supreme Court announce a new rule in Sánchez Valle? No doubt, and the parties do not dispute this point, but rather its retroactivity.  See generally Resp'ts' Suppl. Mem.  "It is admittedly often difficult to determine when a case announces a new rule," and the Supreme Court has been careful "not [to] attempt to define the spectrum of what may or may not constitute a new rule for retroactivity purposes."  Teague v. Lane, 489

---

[12] The late Judge Casellas observed the distinction between Puerto Rico and the States in relation to the dual sovereign doctrine:

> At its core, Sánchez Valle was a criminal case where the Supreme Court narrowly addressed a fundamental injustice in the American legal system -- the dual sovereignty doctrine that permits two jurisdictions within the same nation to prosecute a defendant for the same offense.  The Court is not aware of any other civilized country that allows this.  In Sánchez Valle, the Supreme Court was able to remedy this seemingly unfair situation but only as to Puerto Rico, given the Commonwealth's unique constitutional relationship with the United States.

Morales-Font v. Air Charter, Inc., CV 17-1033 (SEC), 2017 WL 4119620, at *4 n.4 (D.P.R. Sept. 15, 2017) (Casellas, J.).

U.S. 288, 301 (1989).  Nevertheless, as here, "a case announces
a new rule when it breaks new ground or imposes a new obligation
on the States or the Federal Government . . . To put it
differently, a case announces a new rule if the result was not
dictated by precedent existing at the time the defendant's
conviction became final."  Id. (emphasis omitted).

> ### 4. The Supreme Court's Decision in Sánchez Valle is Retroactive.

This Court rules that Sánchez Valle applies retroactively.[13]
Until last May, the Supreme Court held that unless a new rule

---

[13] The Court observes that this not the first time the issue
of retroactivity of Sánchez-Valle has worked its way up to the
First Circuit.  In Santana-Rios v. United States, 235 F. Supp.
3d 386, 387-88 (D.P.R. 2017) (Gelpí, J.), the court ruled that
it lacked authority to decide the issue of retroactivity of
Sánchez Valle under Section 2255.   The Santana-Rios court
authorized a certificate of appealability on the "novel issue
regarding the retroactivity of the Sánchez-Valle ruling."  See
id. at 388.  On appeal, the First Circuit issued an unpublished
judgment disagreeing that the district court lacked authority to
decide the retroactivity issue:

> [The district court's] assessment appears to be
> contrary to this court's statement in Butterworth v.
> United States "that district and appellate courts, no
> less than the Supreme Court, may issue opinions on
> initial petitions for collateral review holding in the
> first instance that a new rule is retroactive in the
> absence of a specific finding to that effect by the
> Supreme Court."  775 F.3d 459, 464 (1st Cir. 2015)
> (emphasis added; internal quotation marks and brackets
> omitted).  The underlying motion was [Petitioner's]
> "initial petition[] for collateral review."  Id.

Judgment at 1, Santana-Rios v. United States, Appeal No. 17-1199
(1st Cir. April 1, 2019) (emphasis omitted).  The First Circuit

falls within two exceptions it does not apply retroactively.

"First, a new rule should be applied retroactively if it places

certain kinds of primary, private individual conduct beyond the

---

did not decide the issue of retroactivity, but rather affirmed
on an alternative ground that a privity requirement between
federal and state prosecutors had not been developed.  Id. at 2.

    Subsequently, district courts have cited Santana-Rios for
the proposition that Sánchez-Valle is not retroactive on appeal.
See e.g. Valdez-Aponte v. United States, CV 16-2922(RAM), 2021
WL 1565299, at *2 (D.P.R. Apr. 21, 2021) (citing Santana-Rios
and holding in 28 U.S.C. § 2255 petition context without
explanation, "the ruling in Sanchez-Valle does not apply
retroactively"); Merced-Nieves v. Baltazar, 3:17-CV-1412, 2019
WL 1531926, at *5 (M.D. Pa. Apr. 9, 2019) (citing Santana-Rios
as indicating that Sánchez Valle is not retroactive); Lopez-
Rivera v. United States, CR 12-656 (ADC), 2018 WL 5016399, at *2
(D.P.R. Oct. 16, 2018) (same).  These decisions are of little
value in light of the First Circuit's ruling on appeal.

    Furthermore, this Court is aware that the issue of
retroactive application of Sánchez Valle is the subject of a
pending motion for a certificate of appealability in Rodriguez-
Mendez v. United States.  See Motion for Certificate of
Appealability, Rodriguez-Mendez v. United States, Appeal No. 20-
1360 (1st Cir. Sept. 30, 2020).  In Rodriguez-Mendez, the
district court denied a federal prisoner's habeas corpus
petition, relying on the First Circuit's unpublished decision in
Santana-Rios as indicative of a "privity" requirement in Double
Jeopardy analysis, and avoided retroactivity analysis.  16-cv-
2683, 2019 WL 4875301, at *4 (D.P.R. Sept. 30, 2019) (Gelpí, J.)
("There is no need for this Court to decide whether Sanchez
Valle applies retroactively or not; that issue is for another
day.  Much like the petitioner in Santana-Rios, Rodríguez Méndez
has failed to meet the stone set privity requirement necessary
for his double jeopardy claim to thrive.").  This Court
disagrees that there is any "privity" requirement necessary for
a Double Jeopardy claim, as opposed to a collateral estoppel
claim.  As guided by the First Circuit in Santana-Rios and
Butterworth, this Court provides its ruling on this issue in the
first instance as is its duty.

power of the criminal law-making authority to proscribe.

Second, a new rule should be applied retroactively if it

requires the observance of those procedures that . . . are

implicit in the concept of ordered liberty." Teague, 489 U.S.

at 307 (citations and quotations omitted).  The second exception

applied, at least theoretically, to "watershed rules of criminal

procedure." Id. at 311.

As the Supreme Court has recently decided, however, the

second, so-called watershed exception, had never been applied by

the Supreme Court in the three decades since Teague and is

therefore extinguished by desuetude.  See Edwards v. Vannoy, 141

S. Ct. 1547, 1556-60 (2021).  Now, only new substantive rules

are retroactive on collateral review:

> New substantive rules alter "the range of conduct or
> the class of persons that the law punishes." [Schriro
> v.] Summerlin, 542 U.S. [348,] 353 [2004].  Those new
> substantive rules apply to cases pending in trial
> courts and on direct review, and they also apply
> retroactively on federal collateral review.  New
> procedural rules alter "only the manner of determining
> the defendant's culpability." Ibid. (emphasis
> deleted).  Those new procedural rules apply to cases
> pending in trial courts and on direct review.  But new
> procedural rules do not apply retroactively on federal
> collateral review.

Id. at 1562.[14]

---

[14]   The profound impact of the abandonment of the watershed
exception was observed by Justice Kagan (joined by Justice
Breyer and Justice Sotomayor) in her dissent:

Sánchez–Valle is a substantive rule that requires full retroactive effect because it goes to the heart of the power of a single sovereign -- the federal government and the Commonwealth of Puerto Rico -- to bring a successive prosecution of Núñez Pérez for identical crimes.

The Commonwealth argues that in Sánchez Valle the Supreme Court "merely took the Commonwealth of Puerto Rico out of the dual sovereignty exception, putting it back under the application of the 'double jeopardy' prohibition." Resp'ts' Suppl. Mem. 4 (emphasis omitted). This argument minimizes the profound constitutional forces at work here. Admittedly, in their dissent, Justice Brennan and Justice Marshall raised the concern that post-Teague, "[h]abeas claims under the Double Jeopardy Clause will also be barred under the plurality's approach if the rules they seek to establish would 'brea[k] new ground or impos[e] a new obligation on the States or the Federal Government,' ante, at 301, because they bear no relation to the petitioner's guilt or innocence." Teague, 489 U.S. at 336–37

---

Not content to misapply Teague's watershed provision here, the majority forecloses any future application. It prevents any procedural rule ever -- no matter how integral to adjudicative fairness -- from benefiting a defendant on habeas review. Thus does a settled principle of retroactivity law die, in an effort to support an insupportable ruling.

Edwards, 141 S. Ct. at 1574 (Kagan, J., dissenting) (citations omitted).

(Brennan, J., dissenting).  As the Supreme Court later held,
however, "a new rule placing a certain class of individuals
beyond the State's power to punish by death **is analogous to a
new rule placing certain conduct beyond the State's power to
punish at all**."  Penry v. Lynaugh, 492 U.S. 302, 330 (1989)
(emphasis added), abrogated by Atkins v. Virginia, 536 U.S. 304
(2002).  The Supreme Court in Penry also referred to new rules
as those concerning "substantive categorical guarantees accorded
by the Constitution, regardless of the procedures followed."
Id. at 329.

     Other courts have held that the protections afforded by the
Double Jeopardy Clause are one such guarantee.  See McIntyre v.
Trickey, 938 F.2d 899, 904 (8th Cir. 1991) ("The protection
afforded by the [D]ouble [J]eopardy clause operates at an
elemental level . . . Because it bars an unconstitutional
prosecution, a rule concerning double jeopardy is analogous to
the rule discussed in Penry, which would have barred the
imposition of an unconstitutional punishment . . . We therefore
conclude that a rule concerning double jeopardy . . . falls
under the first Teague exception and must be accorded full
retroactive effect."), judgment vacated on other grounds sub
nom. Caspari v. McIntyre, 503 U.S. 978 (1992); see also Johnson
v. Howard, 963 F.2d 342, 345 (11th Cir. 1992) ("[B]ecause its
very purpose is to prevent the occurrence of unconstitutional

[29]

prosecutions, it follows that the prohibition on double jeopardy is a categorical guarantee[] accorded by the Constitution.") (quotations omitted) (citing North Carolina v. Pearce, 395 U.S. 711, 718 (1969) (describing the Double Jeopardy Clause as a "basic constitutional guarantee")).[15]

More recently, in Welch v. United States, Justice Thomas expressed generally that under retroactivity analysis, "if the Court ruled that the Double Jeopardy Clause bars **all** federal reprosecutions, I doubt that rule would be retroactive.  That rule dictates **when** a defendant may be tried and convicted of certain conduct -- not the substance of the crime for which the defendant is tried, or the punishment imposed."  578 U.S. 120, 144 (2016) (Thomas, J., dissenting).  Nevertheless, the Court agrees with the Eighth and Eleventh Circuits' conclusions that rules with respect to the Double Jeopardy Clause are substantive.

---

[15] The Eighth Circuit's assertion that a rule affecting Double Jeopardy is a substantive rule has been criticized by the Second Circuit.  See United States v. Salerno, 964 F.2d 172, 178 (2d Cir. 1992) (disagreeing with the Eighth Circuit's analysis in Mcyntire v. Trickey).  On remand in McIntyre, the Eighth Circuit rejected the Second Circuit's disagreement and "adhere[d] to [its] holding that Grady must be accorded retroactive effect because the prohibition on double jeopardy is a categorical guarantee accorded by the Constitution."  975 F.2d 437, 439 n.2 (8th Cir. 1992), judgment vacated sub nom. Caspari v. McIntyre, 510 U.S. 939 (1993).  This Court agrees with the Eighth Circuit.

Indeed, a case prior to Sánchez Valle in which the Supreme
Court **rejected** the dual sovereignty doctrine is Waller v.
Florida, 397 U.S. 387, 390-95 (1970).  In that case, the Supreme
Court held that a state and municipality were not separate
sovereigns for purposes of the Double Jeopardy Clause:

> These provisions of the Florida Constitution
> demonstrate that the judicial power to try petitioner
> on the first charges in municipal court springs from
> the same organic law that created the state court of
> general jurisdiction in which petitioner was tried and
> convicted for a felony.  Accordingly, the apt analogy
> to the relationship between municipal and state
> governments is to be found in the relationship between
> the government of a Territory and the Government of
> the United States.

Id. at 393.  Although pre-Teague, the Supreme Court later
"accorded full retroactive effect" to Waller, holding that
"[t]he guarantee against double jeopardy is . . . a
constitutional right of the criminal defendant . . . [with the]
practical result . . . to prevent a trial from taking place at
all, rather than to prescribe procedural rules that govern the
conduct of a trial."  Robinson v. Neil, 409 U.S. 505, 509, 511
(1973).

This is where the rubber hits the road here.  Sánchez-Valle
fundamentally defined the sovereign relationship between the
United States and the Commonwealth of Puerto Rico, identifying
the Constitutional limits on each sovereign's authority to bring
identical subsequent criminal prosecutions -- indeed, "a

[31]

substantive categorical guarantee accorded by the Constitution"
Penry, 492 U.S. at 329, analogous to the "power to punish at
all," id. at 304.  The Sánchez-Valle decision informs this Court
that the federal government's and the Commonwealth's authority
to prosecute identical actions under identical criminal laws is
a "substantive" rule.  See McIntyre, 938 F.2d at 904.

The Commonwealth argues that "applying Sánchez-Valle
retroactively would potentially overturn decades of convictions
obtained in reliance on the application of the dual sovereignty
exception to the Commonwealth of Puerto Rico."  Resp'ts' Suppl.
Mem. 6.  Even accepting the premise of this argument -- which is
not fully developed in the record -- the Commonwealth's argument
fails on a more fundamental level.  It is true, of course, that
"applying constitutional rules not in existence at the time a
conviction became final seriously undermines the principle of
finality which is essential to the operation of our criminal
justice system."  Edwards, 141 S. Ct. at 1554 (quotations
omitted).  As the Supreme Court recently held, however, finality
interests generally implicate at least two concerns.

"First, a federal order to . . . release a state prisoner
overrides the State's **sovereign power** to enforce societal norms
through criminal law.  That is so because habeas relief
frequently cost[s] society the **right to punish** admitted
offenders."  Shinn v. Ramirez, 142 S. Ct. 1718, 1731 (2022)

[32]

(emphasis added; citations and quotations omitted).  The concern
is that federal interference with the State as a separate
sovereign may "inflict a profound injury to the powerful and
legitimate interest in punishing the guilty, an interest shared
by the State and the victims of crime alike."  <u>Id.</u>  That
interest is wholly absent here: Núñez Pérez **has** been punished
for the crimes of conviction by a **single sovereign**, and
therefore there is no separate, tread-upon sovereign power or
interest in play.

Second, and apparently more to the Commonwealth's point,
"federal intervention imposes significant costs on state
criminal justice systems.  It disturbs the State's significant
interest in repose for concluded litigation, and undermines the
States' investment in their criminal trials."  <u>Id.</u> (citations
and quotations omitted).  This important interest, however, is
not outweighed by the interest in an individual's constitutional
right to be prosecuted only once for a crime.  The federal
government and the Commonwealth of Puerto Rico, again, are one-
and-the same, at least for purposes of Double Jeopardy.[16]  Here,

---

[16] Núñez Pérez's petition also argues that the doctrine of
collateral estoppel, or issue preclusion, bars the Puerto Rico
action.  "[W]hether a criminal defendant's issue preclusion
rights exist outside of the double jeopardy context is an open
question in this circuit."  <u>United States</u> v. <u>Rosado-Cancel</u>, No.
13-cr-731, 2017 WL 543199, at *3 (D.P.R. Feb. 10, 2017)
(Domínguez, J.), <u>aff'd</u>, 917 F.3d 66 (1st Cir. 2019).  Unlike the
doctrines of claim and issue preclusion in the **civil** context,

the federal government and the Commonwealth as single sovereign
have achieved a federal conviction that is left undisturbed by
the outcome in this case.

When stripped of the dual sovereignty argument, the
Commonwealth's contention boils down to a desire to preserve
unconstitutional convictions as a result of its dissatisfaction
with a first conviction or acquittal in federal court.  Justice
Gorsuch's dissent in Gamble dispenses with the Commonwealth's
reliance argument, albeit in arguing against continued
recognition of the dual sovereign doctrine as between the
federal government and the States:

> That leaves reliance.  But the only people who
> have relied on the separate sovereigns exception are
> prosecutors who have sought to double-prosecute and
> double-punish.  And this Court has long rejected the
> idea that "law enforcement reliance interests
> outweig[h] the interest in protecting individual
> constitutional rights so as to warrant fidelity to an
> unjustifiable rule."  Instead, "[i]f it is clear that
> a practice is unlawful, individuals' interest in its
> discontinuance clearly outweighs any law enforcement
> 'entitlement' to its persistence."  That is the case
> here.
>
> The Court today disregards these lessons.  It
> worries that overturning the separate sovereigns rule

---

there is no requirement in the **criminal** context that bars
subsequent timely charges as to matters which could have been,
but were not, included in the original indictment.  Thus, even
if claim preclusion applies beyond the reach of the Double
Jeopardy Clause, the firearms licensing and possession charges
were not litigated in the original federal criminal action and
claim preclusion plays no role here.  Accordingly, the Court
denies the petition as to the Puerto Rico Weapons' Possession
convictions.

could undermine the reliance interests of prosecutors
in transnational cases who might be prohibited from
trying individuals already acquitted by a foreign
court.  Yet even on its own terms, this argument is
unpersuasive.  The government has not even attempted
to quantify the scope of the alleged "problem," and
perhaps for good reason.  Domestic prosecutors
regularly coordinate with their foreign counterparts
when pursuing transnational criminals, so they can
often choose the most favorable forum for their mutual
efforts.  And because Blockburger requires an identity
of elements before the double jeopardy bar can take
hold, domestic prosecutors, armed with their own
abundant criminal codes, will often be able to find
new offenses to charge if they are unsatisfied with
outcomes elsewhere.

           *  *  *

     Enforcing the Constitution always bears its
costs.  But when the people adopted the Constitution
and its Bill of Rights, they thought the liberties
promised there worth the costs.  It is not for this
Court to reassess this judgment to make the
prosecutor's job easier.  Nor is there any doubt that
the benefits the framers saw in prohibiting double
prosecutions remain real, and maybe more vital than
ever, today.  When governments may unleash all their
might in multiple prosecutions against an individual,
exhausting themselves only when those who hold the
reins of power are content with the result, it is "the
poor and the weak," and the unpopular and
controversial, who suffer first -- and there is
nothing to stop them from being the last.  The
separate sovereigns exception was wrong when it was
invented, and it remains wrong today.

Gamble, 139 S. Ct. at 2008-09 (Gorsuch, J., dissenting)

(citations omitted).  The correction of the blatant violation of

the fundamental constitutional right against double jeopardy, in

light of the relationship between the federal government and the

Commonwealth of Puerto Rico as one single sovereign, is a substantive new rule that is retroactive on collateral review.

**C.    The Puerto Rico Courts' Retroactivity Analysis of Sánchez-Valle was Contrary to or an Unreasonable Application of Clearly Established Federal Law.**

"The junction where federal habeas power intersects with state criminal processes is enswathed in a mutuality of respect between sovereigns.  It is that principle of comity which underlies the federal courts' unwillingness to adjudicate too hastily matters of fundamental federal significance arising out of state prosecutions."  Nadworny v. Fair, 872 F.2d 1093, 1096 (1st Cir. 1989).  "The federal habeas review provided for in [section] 2254 exists 'to rescue those in custody from the [the state courts'] **failure to apply federal rights, correctly or at all.**'"  Evariste v. Massachusetts, No. CV 20-10151-DPW, 2022 WL 1625000, at *5 (D. Mass. May 23, 2022) (Woodlock, J.) (emphasis added) (quoting Nadworny, 872 F.2d at 1096).  With the utmost respect to the Puerto Rico courts, they did not apply clearly established federal law concerning retroactivity.

In the context of the Rule 192.1 decision, the Court of First Instance, and later the Puerto Rico Court of Appeals, ruled that they were bound by the Supreme Court of Puerto Rico's determination that Sánchez Valle only applied retroactively to those cases in which the judgment was not final and unappealable.  See P.R. Ct. First Instance Res. 4-5; P.R. Cir.

Ct. Res. 7.  Those courts relied upon the Puerto Rico Supreme
Court's holding in Puerto Rico v. Torres Irizarry.  See Second
Mot. Submitting Certified Trans., Ex. 1, Offic. Trans. P.R.
Supreme Ct., Puerto Rico v. Torres Irizarry, CC-2014-1030
("Offic. Trans. Puerto Rico v. Torres Irizarry"), ECF No. 41-1.

In Puerto Rico v. Torres Irizarry, the Supreme Court of
Puerto Rico held that Sánchez-Valle "must have a retroactive
effect" with respect to the case before it.  Id. 12-13.  In that
case there had been a judgment of conviction, but appellate
rights had not been finally exhausted.  Id. 3, 5.  Thus, the
Puerto Rico Supreme Court's retroactivity analysis, citing
Griffith v. Kentucky, 479 U.S. 314 (1987), concerned cases that
were not final, see Offic. Trans. Puerto Rico v. Torres Irizarry
3, 12.

The Puerto Rico Supreme Court did not determine
retroactivity as to final convictions because that issue was not
before the Court.  Rather, in **that** narrow retroactivity context,
"**and** because there [was] no final sentence rendered in the case
at bar," it was held proper "to apply retroactively the rule
laid down in Sánchez Valle."  Id. 13 (emphasis added).  As
argued by Núñez Pérez, and after reviewing the Official
Translation, Torres Irizarry is inapposite to the situation
here, as that case understandably avoided a broad holding that
was not required.

The lower courts in Puerto Rico, absent further guidance from the Supreme Court of Puerto Rico, failed to address **federal** retroactivity law by relying on <u>Torres Irizarry</u> as to the case at bar.  The Puerto Rico Supreme Court declined certiorari.  By failing to apply federal law to Núñez Pérez case, those courts have acted contrary to federal law, specifically the Supreme Court's retroactivity analysis.

To sum up, as between the United States and the Commonwealth of Puerto Rico, <u>Sánchez-Valle</u> conclusively held they are one-and-the-same for purposes of Double Jeopardy.  It is anathema to our system of justice that an unconstitutional prosecution, conviction, and restraint on liberty be permitted to stand on specious notions of finality and reliance.  The Puerto Rico courts failed to apply the Supreme Court's federal retroactivity analysis, and therefore that "decision was contrary to, or involved an unreasonable application of, clearly established Federal law,"  28 U.S.C. § 2254(d)(1).  <u>Sánchez-Valle</u> is retroactive.  Where there is no dispute that the federal conviction for carjacking with resultant death and the Puerto Rico convictions for carjacking and manslaughter are identical -- and they are -- a writ of habeas corpus is appropriate and shall enter as set forth below.  The remaining convictions are **not** identical and therefore do not invoke Double Jeopardy concerns.

[38]

**IV.   CONCLUSION AND ORDER**

For the aforementioned reasons, the motion to dismiss, ECF No. 17, is hereby **DENIED** and a writ of habeas corpus shall enter pursuant to 28 U.S.C. § 2254(d)(1), striking in part the conviction and sentence only as to the Commonwealth of Puerto Rico carjacking and manslaughter judgments, but in all other respect the convictions and sentences shall stand.  The execution of the writ of habeas corpus shall be **STAYED** until the expiration of the appeal period for this order and, if an appeal is filed, the resolution of any appeal, absent further order of this Court, the First Circuit Court of Appeals, or the Supreme Court.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[17]

---

[17]  This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 44 years.